PEOPLE, PLAINTIFF AND APPELLEE, *v.* MUÑOZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for Assault and Battery.

No. 1709.—Decided May 31, 1921.

EVIDENCE — CROSS-EXAMINATION — PREJUDICE OF WITNESS. — The defense has a right to bring out on cross-examination the prejudice of a witness for the

prosecution in order to furnish the jury or the court with facts from which the degree of credibility of the witness may be deduced. For example, it is admissible that the defendant cross-examine a witness for the prosecution as to the motive which induced him to go to the judge and tell him that he was present when the crime was committed.

The facts are stated in the opinion.

*Mr. F. Cervoni Gely* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Appellant was convicted of aggravated assault and assigns as error, first, an objection interposed by the court to a question propounded by the defense in regard to the motive of a witness in reporting to the judge the fact that he was present at the time the offense was committed, and, second, prejudice on the part of the trial judge in rendering judgment.

The incident upon which the first assignment is based is shown by the following extract from the record:

"Juan Gómez testifies that at noon he was going to the farm Barriola and saw when the defendant twice assaulted Santiago Iglesias with a knife and ran away and was taken up to the factory.

"Cross-examined by the defense, he says that he is a witness in this prosecution because he went to the judge personally to tell him that he had witnessed the occurrence. And when the witness was asked by the defense what reason he had for saying to the judge that he had witnessed the occurrence, the court overruled the question and exception was taken by the defense."

The object and purpose of the question excluded by the trial judge is reasonably apparent upon the face thereof and the refusal to permit any investigation whatever along this line amounts to an abuse rather than an exercise of judicial discretion.

"A question will not as a rule be allowed on cross-examination which is obviously irrelevant, but a witness may be cross-examined as to matters irrelevant to the issue, in order to discredit his testimony by what he himself may state in answer although not for the

purpose of contradicting him by another witness. This is true regardless of the rule prevailing with respect to the scope of cross-examination as to matters directly material to the issue. Although as to these matters the cross-examination, can not extend beyond the range of the direct examination, yet the fullest inquiry must be allowed into collateral matters, whether they have been the subject of direct examination or not. In fact, this line of inquiry is one of the most important purposes of cross-examination as one of the chief agencies for the development of the truth in judicial inquiries. By means thereof the relation of the witness to the cause or the parties, his bias or interest, if he has any, his character for truth and veracity, indeed any collateral fact which may bear on his truthfulness and impartiality may be brought to light. Any question may be put which reasonably tends to explain, contradict, or discredit any testimony given by him, or to test his accuracy, memory, veracity, or credibility. Cross-examination with a view to direct impeachment is not the limit of the right. Regardless of the rule prevailing in a jurisdiction as to the scope of cross-examination on material matters, it is always permissible on cross-examination to lay a foundation for impeaching the witness by proving prior contradictory statements, and where a witness admits the existence of a variance between his testimony and his statements on other occasions, to examine him as to the motives inducing the variance." 28 R. C. L. 197, section 197.

"Inquiries into the feelings or disposition of the witness to conceal or pervert the truth are not to be excluded as being collateral. Personal ill will on the part of a witness towards a party to the action is evidence of bias which may affect credibility, and the right to elicit the fact on cross-examination may not often be denied without an abuse of discretion which would be deemed prejudicial to the litigant. In such cases, the proper scope for the exercise of discretion by the trial court is in limiting the cross-examination to a disclosure of such facts only as may show the existence of hostility, and rejecting any matters which might be pertinent only to a justification of hostility on the part of the witness, for it is the existence of the feeling which is material, and not the right or wrong in the transaction which occasions it." *Idem,* 612, section 201.

"A witness may be impeached by showing his bias, as by proving near relationship, sympathy, hostility or prejudice, and this may be done by his own testimony or by other evidence. It is compe-

tent to show the state of feeling of a witness when called to testify for the purpose of giving the jury all the facts necessary to a full and fair consideration of its evidence, and enable them to determine the degree of credit to be accorded thereto. For example, it is proper, on cross-examination, to ask a child as to the state of feeling of its parents toward the defendant, if bad feeling exists and that fact is known to the child, such evidence being admissible and competent to affect the credibility of the witness." *Idem,* 615, section 204.

See also Wharton's Criminal Evidence, Vol. 1, page 988, sections 476 *et seq.*

The narrative statement of all other testimony given at the trial is so brief that it may as well be inserted in full. We quote from the record:

"Santiago Iglesias testifies that he filed a complaint against Francisco Muñoz because he was assaulted with a knife in San Lorenzo when there was a movement there against the store-keepers and butchers for the purpose of lessening the cost of living.

"That he sent for some meat and he was told that if he purchased it they would throw it away. Then witness went personally to buy it and the defendant who was in a crowd said to the witness: 'We will have to get rid of this man.' On the next day when the witness was going to the Colectiva, the defendant, who was under a tree, took out a knife and attacked the witness, who ran away and defendant went after him and thereupon Hilario García who had gone after him and had disarmed him was wounded in one of his hands. Objection is made by the defense to the effect that witness testifies as to what had happened to Hilario García. The testimony is admitted and the defense took exception.

"Witness proceeded to say that this happened in July 3, 1920, at San Lorenzo, and while Juan Gómez, Hilario García and Belén Claudio were present.

"Cross-examined by the defense witness says that everybody in San Lorenzo was against him but however they prevented the defendant from wounding him.

"Hilario García testifies that on July 3, Francisco Muñoz was resting on a 'jobos' tree and while Santiago Iglesias passed Muñoz followed him with a knife in his hand. Another cigar-maker who was coming from below got hold of him when the defendant said

'Let me get at this fellow.' The defendant got away from the witness and went after Iglesias, but as witness was there he disarmed the defendant.

"Cross-examined by the defense he says that he took the knife from the defendant, but that he did not deliver the knife to the police, nor does he know what became of the knife.

"Belén Claudio testifies that she was going to the factory with Santiago Iglesias and thereupon defendant Muñoz called Iglesias and the latter ran away without being hurt by the defendant. That the defendant did not have any knife and if he had any witness could have noticed it. She also testifies that defendant did not threaten Iglesias.

*    *    *    *    *    *    *

"Hilario García. The judge of his own initiative again called witness Hilario García who reaffirmed his previous testimony and further testified in answer to a question from the judge that Belén Claudio was going with Santiago Iglesias. The judge thereupon asked him the following question: 'So that this woman was in a position to see the defendant displaying his knife?' Witness replied: 'No, because she went up.'

"Cross-examined by the defense witness says that he is an invalid and went to take a walk to the slaughter-house.

"Santiago Iglesias. This witness is called at the request of the judge to ask him whether Belén Claudio went with him, witness answering that he really was accompanied by her and that the latter shouted: Get away, get away Santiago, you will be hurt.

"Cross-examined by the defense why he had not testified the same thing when he was first called to testify, witness says that because it was not convenient or because he had not remembered it. Again questioned why he had forgotten such an important matter he said: 'Same as many things are forgotten.'

"Isidoro Vázquez. To questions put by the *fiscal* testifies that upon entering the factory on the day of the occurrence he did not see anything happening.

"With this testimony the prosecution rested its case.

"Evidence for the defense.

"Ignacio Rivera testifies that on the day of occurrence witness went to the factory and stopped at a place where there were ten or twelve persons, among whom was defendant Muñoz who said to Santiago Iglesias who then passed thereabout: 'Say, Santiago, do

me the favor, I have to talk with you,' to which Iglesias replied: 'I can not see you now.' And witness heard somebody in the crowd saying: 'You must go, Santiago, because you will be hurt,' but he could not know who was the person making such remark. That Santiago ran away and everybody began to laugh at the happening. That defendant remained at the same place where he was, it being untrue that he went after Santiago. That if he had pursued him witness would have seen it.

"The *fiscal* merely asks the witness what is his occupation. Witness says he is a cigar-maker.

"Enrique Vázquez says that on the day of the occurrence he was smoking at a place opposite the factory in a crowd where defendant Muñoz was also. That upon Iglesias arriving the defendant said to him: 'Say, Santiago, I have to talk to you,' to which Iglesias replied that he did not have to hear anything. Thereupon somebody said: 'You must go, Santiago, or you will be hurt.' That Iglesias ran away. That defendant did not carry any knife nor pursued Iglesias.

"Cross-examined by the judge witness ratifies his testimony and says that the voice 'you must go or you will be hurt' was a joke."

At the time of rendering judgment the district judge, without mention of any conflict in the evidence as to whether defendant merely spoke to Iglesias or assaulted him, said in part:

"The court has carefully considered the evidence and arrived at the conclusion that this is really an unusual occurrence in Porto Rico and that it demands peculiar study.

"It has become a custom that whenever a movement for a strike takes place here the strikers consider their rights far superior to others, and this is a mistaken belief. This court has always upheld the right of workingmen to go on a strike; but such a right on the part of the workingmen ends where the rights of the other members of the community who do not desire to go on a strike begin. It seems that these individuals who go on a strike in Porto Rico are under the belief that others should also be associated with them and that any one refusing to do so must be threatened and become subject to their criticism. This is a matter that the court will not tolerate. The defendant has a perfect right to go on a strike and others to be on the opposite side. But the idea of creating a panic

in Porto Rico for the reason that others do not approve the strikes can not be tolerated. This is already anarchy in Porto Rico of minor importance which does not cause greater damage to the country due to its population and because of its small area. This defendant is an anarchist and the court adjudges him guilty.

"Monday morning at 9 a. m., is set for the rendition of the judgment in this case."

For the purpose of the present opinion it may be conceded that neither this circumstance nor other matters complained of in connection with the second assignment, would require a reversal had not the court below erred in its peremptory refusal to permit the cross-examination of the witness Gómez in regard to his motive in reporting the facts. At the same time, the language, if literally construed, does leave some room for doubt as to whether the court below was in fact considering primarily the question of guilt or innocence with reference to the offense charged in the complaint as distinguished from the reprehensible character and mental attitude of defendant as an anarchist.

But, however this may be, we are unable to say that defendant was not prejudiced by the error specified in the first assignment, and for this reason, strengthened as it is by other circumstances above referred to, the judgment appealed from must be

*Reversed and remanded.*

Chief Justice Hernández and Justices Wolf, Del Toro and Aldrey concurred.